IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOLENE FEENEY | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL | : | No. 15-cv-3838 |

ORDER

AND NOW, this 12th day of June 2017, upon careful and independent consideration of Plaintiff Jolene Feeney's Brief and Statement of Issues in Support of Request for Review (Doc. No. 6), Defendant's Response in Opposition (Doc. No. 7), Plaintiff's Reply (Doc. No. 8), the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey (Doc. No. 11), Plaintiff's Objections to the Report and Recommendation (Doc. No. 13), Defendant's Response to Plaintiff's Objections, (Doc. No. 15), and the administrative record (Doc. No. 5), it is hereby ORDERED as follows:

1. Plaintiff's objections to the report and recommendation (Doc. No. 13) are OVERRULED.
2. The report and recommendation (Doc. No. 11) is APPROVED and ADOPTED.
3. The decision of the Commissioner of the Social Security Administration is AFFIRMED.
4. Plaintiff's request for review is DENIED. Judgment is entered in the matter in favor of the Defendant and against the Plaintiff.
5. The Clerk of Court is directed to close this matter for statistical purposes.

Plaintiff Jolene Feeney brings this action seeking review of the decision of the Commissioner of Social Security denying her disability benefits and supplemental security income ("SSI"). The matter was referred to Magistrate Judge Elizabeth T. Hey, who prepared a Report and Recommendation proposing that the Commissioner's decision be affirmed. After an

1

independent review of the record, this Court concurs with Magistrate Judge Hey's recommendation, and will affirm the Commissioner's decision.

I. Background

Feeney seeks disability benefits and SSI on the basis of several conditions, including back and hip pain, depression, and anxiety. R. at 79, 377. Feeney was in a car accident in March 2007 that necessitated back surgery, and alleges that began suffering chronic back pain thereafter. R. at 389, 400. According to Feeney, she was unable to work as a result of these conditions from October 2008 until January 2012. R. at 376.

Feeney initially filed this request for benefits in October 2010, seeking benefits dating back to October 2008.[1] R. at 258. Administrative Law Judge ("ALJ") Gerald Spitz held a hearing in August 2012, and denied Feeney's application for benefits, finding that she was capable of performing light work with a sit/stand option. R. at 142. Feeney requested a review of that decision, which the Social Security Administration's Appeals Council granted; remanding the case for further evaluation and a new decision by ALJ Deborah Mande.

A hearing was held before ALJ Mande on June 17, 2014. At the hearing, Feeney testified to her symptoms, stating that on some days she experienced severe pain in her left hip, severe enough that it would interfere with her walking. R. at 79. She also said she suffered from insomnia and depression. *Id.* As a result of these symptoms, Feeney said she did not work at all in 2009 and 2010. R. at 76. She testified that in February 2011 she began taking care of her mother, who was ill. R. at 76–77. She assisted her in showering, managed her medication, and performed household tasks such as cooking, grocery shopping, and taking out the trash. R. at 77,

---

[1] Feeney had filed an earlier application for disability benefits which was denied on May 20, 2010; a denial upheld by the Appeals Council. R. at 98–107, 130. ALJ Mande found that the evidence submitted by Feeney in her October 2010 application did not justify reopening that decision, thereby limiting the instant benefits application to a period beginning May 21, 2010. R. at 18. Magistrate Judge Hey agreed with this finding and Feeney has not objected to it. R&R, at 19.

83–84. This assistance was initially unpaid, but at some point Feeney began receiving pay for providing this care. R. at 77. She continued caring for her mother until October 2012, when her mother moved into a nursing home. R. at 81. Her mother passed away in 2013. R. at 83.

ALJ Mande also reviewed Feeney's medical records. The report and recommendation includes a detailed description of the medical evidence in the record, but this Order will provide a summary. In 2010, Feeney sought repeated medical attention, complaining of back pain. R. at 396, 386, 389. At the first two of these visits, at Jeanes Hospital in September 2010, the treating physicians noted that she had pain and decreased range of motion in her back, but that she could walk without assistance and with a normal gait. R. at 385–391, 396–401. She had an intact range of motion in her extremities and there was no evidence of fracture or malalignment on X-rays of her lumbar spine. *Id.* On both instances, the hospital discharged Feeney with a prescription for pain medication. R. at 387, 394, 401.

In November 2010, Feeney was seen by an orthopedic surgeon at the Rothman Institute. 432–33. Based on an MRI and X-rays, the surgeon concluded that Feeney did not have "true radiculopathy" or disc herniation, although he did note some less significant degenerative changes of the spine. R. at 433. The surgeon recommended against surgery at that point, instead suggesting that Feeney should attempt to lose weight and should engage in aqua-therapy. *Id*.

Feeney returned to the Rothman Institute in December 2010, and was seen by a certified physician's assistant. R. at 531. She again complained of back pain, saying that her symptoms were "worse early in the morning," but that she was otherwise "able to function with her normal daily activities." *Id.* The physician's assistant, in consultation with the surgeon, recommended weight loss and aerobic exercise. R. at 532. He recommended against surgery in favor of "exhaust[ing] all nonoperative treatment." *Id*.

3

In April 2011, Dr. John DeCarlo, M.D., conducted a consultative examination of Feeney. DeCarlo noted that Feeney complained of low back pain. R. at 445. His physical examination revealed no palpable edema, no straight leg raising pain, and no atrophy above or below the knee joints. R. at 447. DeCarlo also tested Feeney's range of motion, which showed full or nearly full range of motion in all instances. R. at 451–52. DeCarlo filled out a statement assessing Feeney's ability to perform work-related physical activities, in which he listed a number of restrictions, including that she could not lift more than 10 pounds and could not stand or walk for more than an hour a day. R. at 449. In the space provided on the form for "supportive medical findings," DeCarlo repeatedly wrote "back pain." *Id.*

Another physician, Dr. Jay Moore, M.D., provided a one-page medical statement regarding Feeney's physical abilities and limitations in August 2012. R. at 533. The statement indicated that Feeney suffered from severe, chronic pain. *Id.* However the statement did not indicate any limitations with respect to Feeney's physical abilities. *Id.*

In addition to the treatment and evaluation Feeney received for her physical conditions, she also underwent treatment and evaluation for her mental health. Dr. Ludmila Radzievska, M.D., treated Feeney at New Life Community Health Services from October 2010 to June 2012. 436-44, 515-30. Feeney sought treatment for depression and insomnia resulting from her back problems. Radzievska noted in Feeney's biopsychosocial evaluation that Feeney appeared well groomed, with a cooperative attitude, and normal eye contact and speech. R. at 519. She had no hallucinations or delusions and no suicidal or homicidal ideation. *Id.* Radzievska described Feeney's thought process as goal directed and noted that her perception was not impaired, her memory was intact, and her insight and judgment were "fair." *Id.* Feeney was assessed with a Global Assessment of Functioning Scores ranging from 55–60 and was diagnosed with Major

4

Depressive Disorder and chronic pain syndrome. R. at 517. Radzievska prescribed her several antidepressants over the course of the treatment, including Prozac, Trazadone, and Paxil. R. at 516. She also prescribed Temazepam to treat insomnia. *Id.*

A psychologist, Daniel Schwarz, Ph.D., conducted a psychological evaluation of Feeney in April 2011. R. at 453–59. Feeney told Schwarz that she lived independently, paying her own bills and performing her own light cooking, light cleaning, laundry, and food shopping. R. at 455. She spent time with friends, and would go shopping or to the movies with them. *Id.* She also spent time networking on the computer and searching for a job. *Id.* Schwarz gave Feeney a Global Assessment of Functioning score of 60, and diagnosed her with dysthymic disorder, NOS (Not Otherwise Specified). R. at 456–57. He also ruled out major depressive disorder. *Id.* Schwarz completed a mental Residual Functional Capacity assessment, in which he gave his opinion that Feeney had marked limitations in her ability to understand, remember, and carry out detailed instructions, to make judgments on simple work-related decisions, to interact appropriately with supervisors and co-workers, and to respond appropriately to pressures and changes in a work setting. R. at 458. He listed moderate limitations in a few other categories. *Id.*

Another psychologist, John Rohar, Ph.D., also completed a mental Residual Functional Capacity assessment after he reviewed Feeney's mental health records in May 2011. R. at 125–27. Rohar concluded that the Residual Functional Capacity assessment performed by Schwarz "overestimate[d]" Feeney's restrictions and was inconsistent with the medical evidence. R. at 127. In Rohar's opinion, Feeney had marked limitations in only one category—the ability to carry out detailed instructions—although she did have moderate limitations in several other categories. R. at 126–27.

ALJ Mande issued a decision on September 11, 2014. R. at 18–30. She determined that Feeney's residual functional capacity permitted her to "perform light work . . . except she is limited to occasional postural activities; to no climbing of ladders and scaffolds; to routine, repetitive tasks; to occasional interaction with co-workers, supervisors, and the public; and to infrequent changes in the work setting." R. at 23. Based on the testimony of a vocational expert, ALJ Mande determined that there were jobs available in the national and regional economies that Feeney could perform, and that Feeney was capable of successfully transitioning to such work. R. at 30. As a result, ALJ Mande found that Feeney was not disabled. *Id.*

Feeney requested a review of the decision by the Appeals Council. R. at 7. The Appeals Council denied the request for review on May 15, 2015, making ALJ Mande's decision the final decision of the Commissioner. *Id.* After Feeney filed this action on July 10, 2015, the Court referred the matter to Magistrate Judge Hey for a report and recommendation. Nov. 30, 2015 Order (Doc. No. 9). Magistrate Judge Hey issued a report and recommendation finding that there was substantial evidence supporting ALJ Mande's decision. R.&R. (Doc. No. 11). Feeney objects.

II.  Legal Standard

To be eligible for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The existence of such a disability is determined by the Social Security Administration through a five-step process. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Under this process, the claimant must show that she "(1) is not currently engaged in gainful employment because she (2) is suffering

6

from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the [Residual Functional Capacity] to return to her previous employment." *Id.* If the claimant is unable to return to her previous employment, then the Commissioner bears the burden at the fifth step of showing that there are other jobs in the national economy, available in significant numbers, which the claimant could perform. *Id.*

Final decisions of the Commissioner of Social Security are subject to review by a federal district court. 42 U.S.C. § 405(g). This review is "limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Even if a court would have decided the matter differently, the Commissioner's decision must still be affirmed so long as there is substantial evidence supporting it. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995)). This requires more than just a scintilla of evidence, but there need not be "a large or considerable amount." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Plummer*, 186 F.3d at 127.

III. Discussion

Feeney objects to Magistrate Judge Hey's report and recommendation on three grounds. First, that ALJ Mande failed to properly follow the Appeals Council's directives with respect to her explanation of Feeney's Residual Functional Capacity. Second, that ALJ Mande improperly rejected medical opinion evidence. And third, that ALJ Mande improperly rejected Feeney's own testimony. Because the Court concludes that there is substantial evidence supporting ALJ Mande's decision, including with respect to the issues raised in the objections, the Court will deny the objections, adopt the report and recommendation, and affirm the Commissioner's decision.

7

A. First Objection

Feeney first objects that the ALJ failed to adequately explain why a sit-stand option was not included in her assessment of Feeney's residual functional capacity. ALJ Spitz—who initially decided the matter prior to a remand by the Appeals Council—found that Feeney was limited to work that would permit her to alternate between sitting and standing positions. In its decision remanding the matter, the Appeals Council noted that "[c]larification of the claimant's residual functional capacity is warranted" because the ALJ had failed to "specify the frequency with which the claimant must change positions." R. at 154. The Appeals Council vacated the original decision and remanded the case with instructions to, *inter alia*, "obtain additional evidence," and "give further consideration to the claimant's maximum residual functional capacity." R. at 155.

When a case is remanded to a new ALJ by the Appeals Council, the second ALJ is not bound by the first ALJ's decision, particularly where the second ALJ hears additional evidence. *See Carter v. Barnhart*, 133 F. App'x 33, 35 (3d Cir. 2005); *Green v. Sullivan*, No. CIV. A. 88-3084, 1990 WL 122916, at *10 (E.D. Pa. Aug. 21, 1990). On remand, the ALJ must follow the instructions of the Appeals Council, and may also "take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977.

When ALJ Mande issued her own findings, she did not discuss the frequency of a sit-stand option because she did not include such an option in her findings of Feeney's residual functional capacity. ALJ Mande reached substantially different conclusion in her assessment of Feeney's residual functional capacity than ALJ Spitz did. ALJ Spitz found that Feeney was capable of "perform[ing] light work . . . except sit stand option." R. at 142. ALJ Mande also found that Feeney could perform light work, but provided a different and more detailed

8

assessment of the limitations to that work, finding that Feeney was "limited to occasional postural activities; to no climbing of ladders and scaffolds; to routine, repetitive tasks; to occasional interaction with co-workers, supervisors, and the public; and to infrequent changes in the work setting." R. at 23. ALJ Mande therefore complied with the Appeals Council's instructions to "obtain additional evidence," and "give further consideration to the claimant's maximum residual functional capacity." R. at 155. The Council never ordered a clarification of the sit/stand option in particular, it said that "[c]larification of the claimant's residual functional capacity is warranted." R. at 154. ALJ Mande's more detailed description of Feeney's capacity, including a specific list of limitations, complied with the Council's orders.

In addition complying with the Appeals Council's order, ALJ Mande's decision on Feeney's residual functional capacity is also supported by substantial evidence. As Magistrate Judge Hey noted, none of the medical evidence submitted by Feeney called for a sit/stand option. And in place of such an option, ALJ Mande included detailed limitations on Feeney's ability to perform light work. R. at 23. The decision carefully weighed the medical evidence and explained how the residual functional capacity was reached. R. at 23–28. Magistrate Judge Hey's decision affirming the ALJ's residual functional capacity decision was therefore correct, and the objection is denied.

B.   Second Objection

Feeney objects to ALJ Mande's evaluation of the medical opinion evidence provided by three experts: Dr. John DeCarlo, M.D., Daniel Schwarz, Ph.D., and Dr. Jay Moore, M.D. The ALJ's decision did reject or give limited weight to the opinions of these experts; however, substantial evidence supported the weight given to their opinions.

9

1.  DeCarlo

Feeney argues that Magistrate Judge Hey and ALJ Mande erred when they rejected the opinions of Dr. John DeCarlo. Dr. DeCarlo was a consultative examiner who evaluated Feeney on one occasion in April 2011. R. at 445. ALJ Mande gave no significant weight to DeCarlo's opinions about Feeney's limitations because the assessment was "based on the claimant's subjective complaints of back pain, which are not supported by treating source records or the objective medical evidence," R. at 26; reasoning Judge Hey found acceptable. R.&R., at 27. Feeney objects, contending that rejecting a medical opinion on the basis of the claimant's credibility is inconsistent with *Morales v. Apfel*, which held that an ALJ may not reject a treating physician's medical opinion based on the ALJ's "credibility judgments, speculation or lay opinion." 225 F.3d 310, 317.

Feeney's argument is flawed. DeCarlo was a consultant who examined Feeney one time, not a treating physician as in *Morales*. This distinction is important, because the opinions of medical experts who did not treat the claimant "are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." SSR 96-6P, 1996 WL 374180 (July 2, 1996). ALJ Mande did not owe Dr. DeCarlo, an examining consultant, the same deference owed to the treating physician in *Morales*. Instead, consultants' findings are "given weight only insofar as they are supported by the evidence in the case record." *Id.*

And unlike the opinion of the treating physician in *Morales*, DeCarlo's opinion was not supported by the objective medical evidence in the record. The only evidence DeCarlo cited for his opinion on Feeney's physical limitations was "back pain." By contrast, the objective evidence from DeCarlo's examination of Feeney does not support the limitations on lifting,

10

standing, and walking that DeCarlo listed. As Magistrate Judge Hey noted, DeCarlo found that Feeney had "a normal gait, no edema in her extremities, no pain on straight-leg testing, no atrophy, and 5/5 motor strength in all extremities; full range of motion in her shoulders, elbows, and wrists, and nearly full range of motion in her knees, cervical spine, and lumbar spine." R.&R., at 28. The lack of objective medical findings supporting DeCarlo's opinion provides substantial evidence for ALJ Mande's decision to give "no significant weight" to DeCarlo's assessment, particularly given his limited contact with Feeney as a non-treating consultant. R. at 26. The objection is therefore denied.

2. Schwarz

ALJ Mande gave no "significant weight" to the assessment by Dr. Schwarz because it was "inconsistent" with the evidence from the consultative examination performed by Dr. Schwarz. R. at 28. Internal inconsistencies are a legitimate basis for an ALJ to reject a medical opinion. *See Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) (holding substantial evidence supported the rejection of a medical opinion where the opinion was "inconsistent with [the doctor's] own notes, [the claimant's] activities of daily living, and the clinical and objective evidence in the record"). There is substantial evidence that Dr. Schwarz's conclusion was inconsistent with the evidence he reviewed. For example, Dr. Schwarz's concluded that Feeney had marked restrictions in understanding and carrying out instructions and in responding appropriately in work settings. R. at 458. But this is belied by the daily activities Feeney described to Dr. Schwarz, such as "hanging out, shopping, and going to the movies" with friends; networking through the computer; living, doing laundry, and food shopping independently; and taking care of her mother. R. at 455 It is also contradicted by the Global

11

Assessment of Functioning score of 60 assessed by Dr. Schwarz, which is consistent with moderate symptoms. R. at 457.

These inconsistencies provide substantial evidence to reject Dr. Schwarz's conclusions, especially when considered together with the contrasting conclusions of Dr. John Rohar, the state agency psychological consultant. In Dr. Rohar's opinion, Dr. Schwarz's conclusions were not supported by the medical evidence—the conclusions "overestimate[d]" Feeney's restrictions. R. at 127. By contrast, Dr. Rohar concluded that Feeney had only moderate limitations in with respect to carrying out simple instructions, working with others, and interacting appropriately with co-workers or members of the public. R. at 126–27. The ALJ was therefore justified in giving more weight to the conclusions of Dr. Rohar than the internally inconsistent conclusions of Dr. Schwarz. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (upholding the ALJ's determination to reject treating physician's conclusion based on the findings of two state agency consultants because there was "internally contradictory evidence"). The objection is denied.

        3.      Moore

Feeney objects that the ALJ inappropriately rejected Dr. Moore's findings because of an insignificant contradiction between Dr. Moore's statement and Feeney's medical records. But this argument misconstrues the ALJ's basis for rejecting Dr. Moore's assessment. Although ALJ Mande mentions a discrepancy between Dr. Moore's statement and notes made by another of Feeney's doctors, ALJ Mande did not reject Dr. Moore's assessment on that ground. Instead, ALJ Mande wrote that she gave no weight to Dr. Moore's assessment because "Moore does not give an opinion regarding specific functional limitations." R. at 26. This description was accurate.

The assessment ALJ Mande rejected consisted of one page form entitled "Medical statement regarding physical abilities and limitations for Social Security disability claim." R. at 533. Despite the title, Dr. Moore did not include any information on Feeney's physical abilities and limitation. The form includes a section on limitations and abilities with a range of options across nine different categories of potential limitations; the physician completing the form is instructed to circle the corresponding answers. *Id.* On the form Dr. Moore filled out with respect to Ms. Feeney, none of the options are circled—the entire limitations and abilities section is blank. *Id.* The failure to provide a specific opinion as to Feeney's limitations justifies ALJ Mande's decision not to give any weight to the assessment. The objection is therefore denied.

  C.  Third Objection

Feeney's final objection is to the ALJ's decision to reject "Plaintiff's testimony regarding symptoms and limitations." Pl.'s Objs. (Doc. No. 13), at 9. A claimant's allegations about subjective symptoms such as pain "must be supported by objective medical evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Evaluating these symptoms is a two-step process: first, the ALJ must determine whether the claimant has a "medical impairment [that] could reasonably cause the alleged symptoms." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). If so, the ALJ must determine the "intensity and persistence" of the symptoms, which requires an evaluation of "the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id.*

Feeney alleged that she had "chronic severe back and left hip pain, with resulting inability to perform prolonged sitting or prolonged standing, and inability to lift anything heavier than a gallon of milk. She also allege[d] disturbed sleep and limited concentration." Complainant's Br, R. at 376. ALJ Mande evaluated these claims with the two-step procedure.

13

The ALJ found that Feeney had impairments that could cause the symptoms she alleged, but that her "statements concerning the intensity, persistence and limiting effects" of the alleged symptoms were "not entirely credible." R. at 24.

Magistrate Judge Hey found that there was substantial evidence supporting this determination, and this Court agrees. First, Feeney's objective medical records contradict her claims of symptoms severe enough to find that she had been disabled. Both ALJ Mande and Magistrate Judge Hey carefully reviewed the details of Feeney's medical records, and noted the manner in which those records belied her claims. For example, her examinations showed that she could walk without assistance and with a normal gait. R.&R., at 32. The orthopedic surgeon who examined her in November 2010 found no evidence of disc herniation and did not conclude that surgery was warranted. R. at 25. Similarly, when she met with a certified physician's assistant in December 2010, he recommended home exercises rather than surgery, and "scheduled her to return only on an as needed basis." R. at 26. Feeney also told the physician's assistant at that examination "that although her symptoms were worse in early morning, she was otherwise able to function with her normal daily activities." *Id.* And in Feeney's mental status examinations, "she was well groomed with an appropriate appearance," "had a cooperative attitude, with "normal eye contact, speech and thought processes." R. at 27. She had no delusions or suicidal ideations, and her "attention, concentration, and memory were intact." *Id.* Two different mental health professionals assessed her with Global Assessment of Functioning scores indicating moderate to mild symptoms. R. at 27–28.

Second, the daily activities Feeney reported were inconsistent with the severe symptoms she alleged. She lived independently, performing light cooking and cleaning and paying her own bills. *Id.* at 27. She was also able to travel to medical appointments on her own by bus. *Id.*

14

Feeney reported that she spent time with friends "hanging out, shopping, and going to movies." *Id.* She also would spend time "networking on the computer" and looking for work, which as ALJ Mande noted, suggests she felt capable of working. *Id.* at 27–28.

Finally, Feeney's role as a caretaker for her mother contradicts her claim of subjective symptoms so severe they prevent her from working. Feeney testified that she assisted her mother with various needs of daily living, including chores like shopping, cooking, and taking out the trash. R.&R., at 33. She also helped her mother shower and managed her medication for her. *Id.* Feeney began doing this work in February 2011, and was paid as a home health care worker beginning in January 2012. *Id.* She performed the same tasks as a paid worker as she had when she was unpaid, and the record does not contain any "apparent changes in her condition or treatment" prior to her resuming substantial gainful activity. *Id.*

Feeney argues that the intensity, persistence, and limiting effects of her symptoms are not at issue. Pl.'s Objs., at 10. But in order to assess a claimant's subjective symptoms, the ALJ is required to "evaluate the intensity and persistence of the pain or symptom," so that he or she can determine "the extent to which it affects the individual's ability to work." *Hartranft*, 181 F.3d at 362. As Magistrate Judge Hey found, the medical records, Feeney's daily activities, and Feeney's caretaking role with her mother provide substantial evidence supporting ALJ Mande's conclusion that Feeney's subjective symptoms were not as severe as she alleged. The objection is denied.

IV. Conclusion

After independent consideration, this Court finds that Commissioner's decision is supported by substantial evidence. The Court will therefore approve and adopt Magistrate Judge Hey's report and recommendation, affirm the Commissioner's decision, and enter judgment in favor of the Defendant.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.